UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Penn America Insurance Company | \| | |
| a/s/o Shoto Inc. | \| | \| |
| | \| | CIVIL ACTION NO.: |
| Plaintiff, | \| | |
| vs. | \| | |
| | \| | |
| E Z Speedy Inc., d/b/a Speedy Mart; | \| | DISTRICT JUDGE: |
| Imbera S.A. de C.V.; | \| | |
| Imbera USA LLC; | \| | |
| Irvin International Inc.; | \| | |
| Coca-Cola Company; | \| | MAGISTRATE: |
| and | \| | |
| Innovative Displayworks, Inc. | \| | |
| | \| | |
| Defendants. | \| | |

**PLAINTIFF PENN AMERICA INSURANCE COMPANY'S COMPLAINT**

COMES NOW the Plaintiff, Penn America Insurance Company, as subrogee of Shoto Inc., by and through undersigned counsel, and brings this civil action against Defendants, E Z Speedy, Inc., Imbera S.A. de C.V., Imbera USA LLC, Irvin International Inc., Coca-Cola Company, and Innovative Displayworks, Inc., and for its causes of action, states as follows:

**PARTIES**

1.     Plaintiff Penn America Insurance Company ("Penn America"), is a company incorporated in the Commonwealth of Pennsylvania, with a principle place of business at Three Bala Plaza East, Suite 300, Bala Cynwyd, Pennsylvania  19004.

2.     Defendant E Z Speedy, Inc., d/b/a Speedy Mart ("EZ") is a Texas corporation formed in the State of Texas, with its principal operation office located at 2950 Gears Rd., Houston, Texas  77067.

3.      Defendant Imbera S.A. de C.V. ("Imbera") is a foreign corporation formed in the Country of Mexico with its principal operation office located at Tequisquiapan KM 3.2, Zone Industrial, San Juan del Rio, QA  76800.

4.      Defendant Imbera USA LLC ("Imbera USA") is a Texas Limited Liability Company formed in the State of Texas, with its principal operation office located at 1925 Shiloh Rd. NW, Bldg #2, Kennesaw, Georgia 30144.

5.      Defendant Irvin International Inc. ("Irvin") is a Georgia corporation formed in the State of Georgia, with its principal operation office located at 11785 Northfall Ln., Alpharetta, Georgia  30009-7961.

6.      Defendant Coca-Cola Company ("Coca-Cola") is a Delaware corporation, with its principal operation office located at One Coca-Cola Plaza, Atlanta, Georgia 30313.

7.      Defendant Innovative Displayworks Inc. ("Innovative") is a California corporation formed in the State of California, with its principal operation office located at 8825 Boston Place, Rancho Cucamonga, California  91730.

## JURISDICTION

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 (Diversity of Citizenship).

9.      Additionally, the amount in controversy, as noted below, exceeds the Court's jurisdictional floor and the underlying event that gives rise to this action occurred within the jurisdiction of this Court.

## BACKGROUND FACTS

10.     At all times relevant hereto, Penn America was approved to issue policies for real property casualty insurance within the State of Texas.

11.     At all times relevant hereto, Penn America insured a property owned by Shoto, Inc. ("Shoto"), located at 2950 Gears Rd., Houston, Texas ("Subject Property").

12.     At all times relevant hereto, Defendant EZ operated a gas station and convenience store as a tenant of Shoto at the Subject Property.

13.     At all times relevant hereto, Defendants Imbera, Imbera USA, Irvin, Coca-Cola, and Innovative (collectively, "Cooler Defendants") were in the business of selling, designing, manufacturing, installing, repairing, marketing and distributing, amongst other consumer/commercial products, display refrigeration units ("Display Coolers") to be used for the display of Coca-Cola brand beverages at convenience stores throughout the United States.

14.     At all times relevant hereto, Display Coolers sold, designed, manufactured, installed, repaired, marketed and/or distributed by the Cooler Defendants were located inside the building owned by Plaintiff's insured, Shoto, Inc., and were being used by Defendant EZ.

15.     On or about February 8, 2017, the Subject Property suffered a fire, which caused significant damage to Shoto, Inc., including damage to the premises, Shoto's personal property located thereupon, and business damages.

16.     On information and belief, the fire and subsequent water damage (caused by the firefighting efforts) was traced to and determined to have been caused by an electrical failure in one or more of the Display Coolers that were located upon the Subject Property and which were sold, designed, manufactured, installed, repaired, marketed and/or distributed by the Cooler Defendants.

17.     The Display Coolers were therefore defective due to the aforesaid electrical failure ("Subject Defect"), and this Subject Defect was the cause of the fire and resulting damage suffered by Shoto.

18.     The Cooler Defendants designed, manufactured, marketed, distributed and placed in the stream of commerce the Display Coolers and their accompanying component parts, including but not limited to the LED lighting strips used in the coolers.

19.     At all times relevant hereto, it is believed and therefore averred that the Display Coolers and the accompanying component parts were being used by Defendant EZ for their intended purposes.

20.     On information and belief, the Subject Defect, which led to the fault, was present since the time of manufacture and distribution by the Cooler Defendants.  As such, the defect at issue made the Display Coolers unreasonably dangerous.

21.     As a proximate cause of Cooler Defendants' negligence, Plaintiff's insured, Shoto, Inc., sustained damage to the Subject Property, which led to the property and business damage payments complained of herein, as more fully set forth below.

22.     Additionally, in the alternative or as a contributing factor, the use of the Display Coolers by Defendant EZ was negligent, as more fully set forth below, and its negligence was the/a proximate cause of the damages complained of herein.

23.     Pursuant to the terms of its policy with its insured, Plaintiff indemnified Shoto, Inc., in the amount of Five Hundred Forty-seven Thousand, Five Hundred Fifty-three Dollars and Thirteen Cents ($547,553.13) for the aforementioned damage.

24.     By operation of law and contract, Plaintiff, as subrogee of Shoto, Inc., seeks all legal damages entitled to it under law, including damages for business injuries; building damage; repair costs; business property damage; and other relief allowed by law.

## COUNT I

*(Product Liability – Design and Manufacturing Defect*
*Common Law and Title 4 Chapter 82 – Cooler Defendants)*

25.     Paragraphs 1 – 24 are incorporated by reference as if fully restated herein.

26.     At all relevant times, the Cooler Defendants were the designer(s), tester(s), manufacturer(s), assembler(s), distributor(s), and seller(s) of the Display Coolers and placed the Display Coolers into the marketplace in a defective and unreasonably dangerous condition.  The Display Coolers were marketed, sold, distributed, and used in the State of Texas.

27.     The Display Coolers reached Shoto, Inc., without substantial change in the condition in which they were designed, manufactured, assembled, distributed, sold, rented, leased and/or supplied by the Cooler Defendants.

28.     At all relevant times, the Display Coolers were not modified, changed or abused prior to the fire, and were at all times relevant hereto used in the manner intended and expected by the Cooler Defendants.

29.     Plaintiff avers that the Cooler Defendants, through their agents, servants, workmen, and/or employees, are liable under the law because:

      a.      The Display Coolers were defective and unsafe;

      b.      The Display Coolers were unreasonably dangerous;

      c.      The Display Coolers were not safe for their intended use;

      d.      The Display Coolers could have been designed more safely;

      e.      The Display Coolers lacked the necessary safety features to make them safe for their intended use and purpose so that they could be operated in a safe manner;

      f.      The Display Coolers were designed, assembled, manufactured, sold, supplied and/or distributed without adequate warnings; and

      g.      The Display Coolers, in the manufacturing, transportation, repair or installation process, were damaged (as a whole or in parts) or

manufactured improperly using defective parts, causing these particular coolers to fail and cause the fire that damaged the Subject Property.

30.     Because of the defective design, manufacture, installation and production of the aforementioned aspects, components and systems of the Display Coolers, they were inherently dangerous in their use by the consumer and should not have been placed into the stream of commerce without design, component and/or installation modification or replacement.

31.     At all times relevant hereto, a contract for loss and/or property damage was in effect between Shoto, Inc., and Penn America, which provided coverage for, among other things, the loss of or damage to the Subject Property, including but limited to the premises, Shoto's personal property located within the premises, and business damages.

32.     Pursuant to the contract of insurance between Penn America and Shoto, Inc., monies have been and will be expended by Penn America on behalf of Shoto, Inc., to the detriment of Penn America, for damage to the Subject Property, including but not limited to the premises, Shoto's personal property, and other costs and losses incurred by Shoto during the time when the Subject Property was unrentable.  Therefore, Penn America, to the extent of payment, is subrogated to the rights of its insured with respect to any and all claims for damages against the Cooler Defendants.

33.     Penn America sustained damages as a result of said expenditures, for which the Cooler Defendants are liable, and the Cooler Defendants are therefore liable to Penn America.

WHEREFORE, Plaintiff Penn America demands judgment in its favor against the Cooler Defendants in the amount of Five Hundred Forty-seven Thousand, Five Hundred Fifty-three Dollars and Thirteen Cents ($547,553.13), plus interest, costs and such other and further relief this Court deems proper.

## COUNT II

*(Breach of Implied Warranty of Merchantability – Cooler Defendants)*

34.     Paragraphs 1 – 33 are incorporated by references as if fully restated herein.

35.     As a result of the design, manufacture and distribution of the Display Coolers by the Cooler Defendants as aforesaid, the Cooler Defendants provided a general warranty to Shoto, Inc., to the public and to Penn America, that the Display Coolers would be of merchantable quality and would be fit for the purpose associated with displaying and cooling beverages.

36.     Shoto, Inc., and, therefore, Penn America, relied upon the skill, expertise, reputation and experience of the Cooler Defendants with respect to quality and characteristics of the Display Coolers when selecting the cooler(s) for use at the above-referenced convenience store.

37.     The condition of the Display Coolers was a defect unknown to Shoto, Inc., and was not discoverable by Shoto, Inc., in the exercise of ordinary care.

38.     The aforementioned failures on the part of the Cooler Defendants constitutes a breach of the implied warranty of merchantability to Shoto, Inc., and, therefore, to Penn America.

39.     As a result of the breach of warranty, the Subject Property, including the premises and Shoto, Inc.'s associated personal property, were substantially damaged.

40.     At all times relevant hereto, a contract for loss and/or property damage was in effect between Shoto, Inc., and Penn America, which provided coverage for, among other things, the loss of or damage to the Subject Property, including but not limited to the premises, personal property located within the premises, and business damages.

41.     Pursuant to the contract of insurance between Penn America and Shoto, Inc., monies have been and will be expended by Penn America on behalf of Shoto, Inc., to the

detriment of Penn America, for damage to the Subject Property, including but not limited to the premises, Shoto's personal property, and other costs and losses incurred by Shoto, Inc., during the time when the Subject Property was unrentable. Therefore, Penn America, to the extent of payment, is subrogated to the rights of its insured with respect to any and all claims for damages against the Cooler Defendants.

42.     Penn America sustained damages as a result of said expenditures, for which the Cooler Defendants are liable, and the Cooler Defendants are therefore liable to Penn America.

WHEREFORE, Plaintiff Penn America demands judgment in its favor against the Cooler Defendants in the amount of Five Hundred Forty-seven Thousand Five Hundred Fifty-three Dollars and Thirteen Cents ($547,553.13), plus interests, costs and such other and further relief this Court deems proper.

### COUNT III
(*Negligence – Cooler Defendants*)

43.     Paragraphs 1 – 42 are incorporated by reference as if fully restated herein.

44.     The Cooler Defendants, as designer(s), manufacturer(s), and/or distributor(s) of the Display Coolers owed a duty of care to Shoto, Inc., and all others potentially affected by defects in their products, to exercise reasonable care in the design, manufacture, installation and distribution of their products.

45.     The Cooler Defendants breached this duty of ordinary care in the following non-exclusive particulars:

> a.     Placed their products into the stream of commerce when they knew, or should have known, that, through consumers' normal use of the Display Coolers, the products would operate in such a manner so as to cause fire and water damage and thus, present an unreasonable risk of injury to consumers;

b.  Distributed, sold and/or supplied a defectively designed and/or manufactured products which they knew or should have known would subject the Subject Property to an unreasonable risk of harm;

c.  Failing to exercise reasonable care in the inspection and testing of the Display Coolers at issue;

d.  Failing to exercise reasonable care in ensuring that the Display Coolers were appropriate for the uses for which they was marketed and distributed;

e.  Failing to warn Penn America, Shoto, Inc., Defendant EZ and others of the dangers of the Display Coolers and their potential to ignite and cause fire and water damage, which the Cooler Defendants knew or should have known existed and created an unreasonable risk of harm to the Subject Property; and

f.  Such other acts or omissions constituting carelessness, negligence, gross negligence, wantonness and reckless disregard of safety as may appear during the course of discovery procedures or which may be adduced at trial of this case.

46.  Because of the misconduct of the Cooler Defendants and the unsafe design of the Display Coolers, the Cooler Defendants, whether individually or collectively, breached a duty it/they owed to consumers, and increased the risk of harm and injury to Shoto, Inc., and, therefore, Penn America.

47.  These breaches of duty were the direct and proximate causes of the fire and subsequent water damage that occurred on February 8, 2017, and, by extension, the damage to Shoto, Inc.  Penn America, pursuant to its right of subrogation as set forth hereinafter has sustained damages and is subrogated to all the rights of Shoto, Inc., with respect to all claims for damages against the Cooler Defendants.

48.  At all times relevant hereto, a contract for loss and/or property damage was in effect between Shoto, Inc., and Penn America, which provided coverage for, among other things, the loss of or damage to the Subject Property, including but not limited to the premises, personal property located within the premises, and business damages.

49.     Pursuant to the contract of insurance between Penn America and Shoto, Inc., monies have been and will be expended by Penn America on behalf of Shoto, Inc., to the detriment of Penn America, for damage to the Subject Property, including but not limited to the premises, Shoto's personal property, and other costs and losses incurred by Shoto during the time when the Subject Property was unrentable. Therefore, Penn America, to the extent of payment, is subrogated to the rights of its insured with respect to any and all claims for damages against the Cooler Defendants.

50.     Penn America sustained damages as a result of said expenditures, for which the Cooler Defendants are liable, and the Cooler Defendants are therefore liable to Penn America.

WHEREFORE, Plaintiff Penn America demands judgment in its favor against the Cooler Defendants in the amount of Five Hundred Forty-seven Thousand, Five Hundred Fifty-three Dollars and Thirteen Cents ($547,553.13), plus interests, costs and such other and further relief this as Court deems proper.

## COUNT IV
*(Negligence – Defendant EZ)*

51.     Paragraphs 1 – 50 are incorporated by reference as if fully restated herein.

52.     At all relevant times, Defendant EZ had a duty to maintain or make appropriate repairs to the equipment located at the Subject Property, including the Display Coolers, to ensure that malfunctions would not occur, which would damage the business and real property owned by Plaintiff's insured, Shoto, Inc.

53.     At all relevant times, Defendant EZ had a duty to follow manufacturer instructions in the installation, maintenance and operation of the equipment located at the Subject Property, including the Display Coolers, to ensure safe operation of said equipment.

10

54.     Plaintiff avers that Defendant EZ, through its agents, servants, workmen, and/or employees were negligent under the law because:

   a.     It failed to properly maintain the Display Coolers;

   b.     It failed to properly install or power the Display Coolers;

   c.     It failed to ensure that all electrical components within the Display Coolers were working properly;

   d.     It failed to report malfunctions in the Display Coolers to appropriate persons/entities;

   e.     It failed to properly repair the Display Coolers; and

   f.     It failed to take the malfunctioning Display Coolers offline.

55.      As a proximate cause of Defendant EZ's negligence, Plaintiff's insured was caused to suffer the damages complained of herein.

56.     At all times relevant hereto, a contract for loss and/or property damage was in effect between Shoto, Inc., and Penn America, which provided coverage for, among other things, the loss of or damage to the Subject Property, including but not limited to the premises, personal property located within the premises, and business losses.

57.     Pursuant to the contract of insurance between Penn America and Shoto, Inc., monies have been and will be expended by Penn America on behalf of Shoto, Inc., to the detriment of Penn America, for damage to the Subject Property, including but not limited to the premises, Shoto's personal property, and other costs and losses incurred by Shoto, Inc., during the time when the Subject Property was unrentable. Therefore, Penn America, to the extent of payment, is subrogated to the rights of its insured with respect to any and all claims for damages against Defendant EZ.

58.     Penn America sustained damages as a result of said expenditures, for which the Cooler Defendants are liable, and the Cooler Defendants are therefore liable to Penn America.

WHEREFORE, Plaintiff Penn America demands judgment in its favor against Defendant EZ in the amount of Five Hundred Forty-seven Thousand Five Hundred Fifty-three Dollars and Thirteen Cents ($547,553.13), plus interests, costs and such other and further relief this Court deems proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Penn America prays for judgment in its favor and against Defendants in the amount of Five Hundred Forty-seven Thousand, Five Hundred Fifty-three Dollars and Thirteen Cents ($547,553.13), plus interests, costs and any and all such other and further relief to which Penn America is entitled and this Court deems proper.

Respectfully submitted,

**PENN AMERICA INSURANCE COMPANY**

By Its Attorneys:

**COTTEN SCHMIDT, L.L.P.**

/s/ *Tom M. Harrison*
Tom M. Harrison
Attorney-in-Charge
U.S.D.C., S.D. Tex. Bar No. 1891
Texas State Bar No. 09122300
25025 N. I-45
The Woodlands, Texas 77380
Telephone:  (281) 824-3553
Facsimile:  (281) 824-3555
tharrison@cottenschmidt.com

*/s/ Christine Changho Bruneau*
Christine Changho Bruneau
U.S.D.C., S.D. Tex. Bar No. 32294
Louisiana State Bar No. 25366
650 Poydras St, Suite 1950
New Orleans, Louisiana  70130
Telephone:  (504) 568-9393
Facsimile:  (504) 524-1933
cbruneau@cottenschmidt.com

13